Dennis Bates FLETCHER, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–82–752.

Court of Criminal Appeals of Oklahoma.

Nov. 5, 1986.

On Rehearing Feb. 18, 1987.

Mac Oyler, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., David W. Lee, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Presiding Judge:

The appellant, Dennis Bates Fletcher, was convicted by a jury in the District Court of Oklahoma County, Case No. CRF–81–5144, for the offense of Concealing Stolen Property, After Former Conviction of a Felony. Punishment was assessed at ten (10) years imprisonment.

On November 4, 1981, law enforcement officers in Oklahoma County simultaneously executed two search warrants on separate locations in downtown Oklahoma City. One warrant was executed at the National Bonding Company, 706 Robert S. Kerr Ave. The appellant was an employee of the bonding firm, and had executed a lease for the building in that capacity. A second warrant was served at 411 Couch Drive. The appellant, again acting as agent for the National Bonding Company, had also rented this building. Inside the two locations police found office furniture stolen August 28, 1981 from the Scott-Rice Company Warehouse. Appellant was linked to the stolen furniture through the testimony of Ron Burnett, who claimed he burglarized the warehouse and stole the furniture at the request of appellant. Burnett claimed he received over $2,000 from the appellant for the furniture. Appellant tes-

tified he purchased the furniture from Burnett in good faith, and did not know it had been stolen.

Appellant has alleged seven assignments of error in his brief-in-chief. We find that appellant's second assignment has merit, and this case must be reversed on that basis. In that proposition, the appellant claims the District Court erred in sustaining the State's "Rule Six" [1] appeal from the order of the preliminary hearing magistrate suppressing all evidence seized as a result of the two searches.

The record regarding this issue reflects that the preliminary hearing magistrate, Special District Judge Jim Pearson, conducted a detailed hearing on the merits of the motion to suppress, a hearing which lasted two full days and involved the calling of thirteen (13) witnesses. At the conclusion of that hearing, the magistrate deliberated three days before issuing a seven-page order granting the motion to suppress. The order contained detailed findings of fact and conclusions of law. The State announced its intention to appeal this adverse ruling via "Rule Six" procedure, and the magistrate obligingly agreed to continue the remainder of the preliminary hearing. On the last day available for a timely ruling, the case was assigned to District Judge William Kessler, who on that afternoon, simply issued an Order stating that the "court reverses [the suppression order] and remands for further preliminary hearing." Judge Kessler issued no opinion or otherwise explained how the magistrate erred in suppressing the evidence.

### I.

We first address the scope of the "Rule Six" appeal vehicle. The "Rule Six" appeal is a creature of, and is governed solely by, the Rules of this Court. Its purpose is simply to afford the State "the right to appeal an adverse ruling or order of a magistrate sustaining a motion to suppress evidence, quashing an information, sustaining a plea to jurisdiction or a demurrer to

1. Rule 6.1, *et seq., Rules of the Court of Criminal* *Appeals,* 22 O.S.1981, ch. 18, App.

the information, or an order discharging a defendant at the preliminary examination because of insufficiency of the evidence ..." Rule 6, *supra* n. 1. If appeal is brought in the proper manner, *see* Rule 6.1, 6.2, the case is first reviewed by the District Court. If an appeal to the District Court is unsuccessful, an appeal may then be lodged with this Court. Rule 6.6. The defendant, however, has no right under the Rule to appeal to this Court an order of the District Court reversing the magistrate's ruling or order.

■■■ The District Court is limited, however, in reviewing the magistrate's decision for errors of law only. Rule 6.5 states:

> In the event the state's application is sustained and the reviewing judge determines the magistrate's adverse ruling or order to be *an error of law*, the judge shall remand the cause to the magistrate with directions to enter a proper order. [Emphasis added.]

Under the "Rule Six" process, the District Court is acting in the capacity of an appellate court. As such, it is bound by the factual findings of the lower court, unless these findings have no support in the record. *See Ellis v. State*, 476 P.2d 352 (Okl.Cr.1970) (ruling of trial court on motion to suppress will be sustained where there is any competent evidence in the record to sustain the judgment of the court). *See also Mitchell v. State*, 73 Okl.Cr. 184, 119 P.2d 99, 100 (1941).

Accordingly, the reviewing judge was limited in his consideration of the State's "Rule Six" appeal to any errors of law the magistrate might have made. We have reviewed the Order of the magistrate and find it is correct as a matter of law.

## II.

The magistrate found two basis for sustaining the motion to suppress evidence, as it related to the case as finally tried. *First*, the magistrate found that the search warrants were improperly executed at night, in violation of 22 O.S. 1981, § 1230. *Second*, the magistrate found that probable cause was lacking, or alternatively, that the issuing judge failed to knowingly consider the affidavits before issuing the warrants.

## A.

■■■ The magistrate's holding that the search was improperly conducted in the nighttime involved his interpretation of 22 O.S. 1981, § 1230, and his findings of fact as they related to this issue. Section 1230 provides:

> The judge shall insert a direction in the warrant that it be served in the daytime, unless the affidavits be positive that the property is on the person, or in the place to be searched, and the judge finds that there is likelihood that the property named in the search warrant will be destroyed, moved or concealed. In which case the judge may insert a direction that it be served at any time of the day or night.

In his application of this statute, the magistrate made the following conclusions of law and findings of fact:

> Title 22 O.S. § 1230 was amended to require a specific finding by the magistrate 'that there is likelihood that the property named in the search warrant will be destroyed, moved or concealed' before a magistrate is empowered to authorize a night search. The affidavit must allege the facts from which the magistrate may reach the required conclusion. There is nothing in either affidavit to show the required specific facts or even the conclusion that the property will be destroyed, moved or concealed. The affidavit alleges that the last theft occurred on September 8, 1981, that it was moved at an unknown date to the premises to be searched and that it would at a later time be sold for profit. There is no reason to believe from the affidavit that the property would not be there when a daylight search was proper. The court finds that the execution was begun in the nighttime. The statute places a mandatory duty on the magistrate to restrict the execution to daytime unless the necessary facts are alleged by the affiant and found by the magistrate.

We agree with the magistrate's conclusions. Section 1230 requires the issuing judge to make a finding that the property contained in the warrant will be destroyed, moved or concealed before he may exercise his discretion to authorize a nighttime search. *See Filgueras v. State,* 668 P.2d 1172 (Okl.Cr.1983). In this case there is nothing in either affidavit to indicate that the property would be lost without a nighttime search. *Cf. Campbell v. State* 651 P.2d 696, 698 (Okl.Cr.1982) (Nighttime search was authorized where affiant had received information that the manufacture of the amphetamines, the object of the search, would begin at midnight; it was logical conclusion that the drugs would be moved or concealed after their manufacture); *Panther v. State,* 637 P.2d 1267, 1269 (Okl.Cr.1981) (Nighttime search approved where affidavit stated that defendant had a source for getting rid of stolen property and also that he had trouble with people living at the house where they were stored; also, affidavit was supplemented with affiant's statement that the property might be disposed of quickly). Instead, the record shows the request for nighttime authorization was almost an afterthought of the officers. According to the officers' testimony, after the warrants were signed, the detectives became concerned because nightfall was "very, very close." Returning to the judge's chamber to express this concern, the issuing judge, without receiving any additional information concerning the need for a nighttime search, simply made a notation on one warrant permitting execution at night, and authorized one of the officers to make a similar notation on the other. Under these circumstances, we agree with the magistrate's conclusion that the nighttime searches were improper.

## B.

Regarding the second infirmity in the search warrant process, the preliminary hearing magistrate entered the following findings of fact and conclusions of law:

The police department presented the magistrate with two search warrants absolutely identical except for one paragraph in the middle of the first page which described different locations. The magistrate testified that he signed one search warrant, although that testimony was later amended to say that his signature appeared on both warrants.

The question then arises is how many different search warrants did the magistrate knowingly consider. In other words, did the magistrate think he was signing two copies of one warrant or the original of each of two warrants with the identical items to be seized at two different locations.

The court finds there is insufficient evidence to conclude that the magistrate knowingly considered and signed two separate warrants. The magistrate was unable to recall the number of warrants he considered. This by itself is not determinative. All of the evidence taken together does not establish what happened. However, the decision to suppress all the evidence does not depend on the answer to this question. If the magistrate knowingly signed only one warrant, the other warrant is obviously not valid for the reason the magistrate did not make his independent examination. The testimony is unsatisfactory for this Court to determine which warrant was knowingly signed, and, therefore, the State cannot establish the search of either premises under a valid warrant.

However, if the magistrate believed he was signing two separate warrants, then the issue arises as to whether he had probable cause to issue the warrants. The magistrate must independently determine from an examination of the affidavit that there are sufficient facts from which the magistrate could determine that the informant was reliable; that is, that the affiant had purchased stolen goods in an undercover capacity based upon the information of this informer. The magistrate must also determine whether the facts support the validity of the informant's conclusion the items are where he says they are. That is, there must be sufficient basis in the affidavit from which the informer could conclude

the items to be seized are in the locations stated. Considering a single affidavit without the other, there are sufficient indication based on his personal observation within the past twenty-four hours.

The problem, however, is that the affidavit in each case makes the same identical allegations. The property is alleged to be in two locations at the same time. Taking the affidavits together, it is clear the informant is wrong. The same described property cannot be at two places at the same time and a magistrate would err if he knowingly signed both warrants. The evidence is undisputed that both warrants were presented by the affiant at the same time to the magistrate. There would be no way from the face of the affidavit to know which location the informant meant.

There are insufficient facts, when the affidavits are considered together, for a magistrate to conclude the informant is providing reliable information.

If the magistrate knowingly considered one warrant, we do not know which was considered. If the magistrate considered both there was insufficient cause to issue the warrants.

In either situation, the issuance of both warrants was error and all items seized are inadmissible.

The testimony of the issuing judge at the preliminary hearing was that he had issued only one warrant, the warrant authorizing the search at 706 Robert S. Kerr Ave. Even after checking his own records, the issuing judge continued to maintain he had issued just one search warrant. However, the State later recalled the judge, and presented for his examination the affidavit and search warrant for 411 Couch Drive. The issuing judge then testified, "It appears that I have signed both affidavits, or acknowledged the signature of [the officer] on both affidavits." He again testified, however, that he could not recall the officers seeking two warrants, nor could he recall if he signed the second warrant under the belief it was a copy of the first. He refused to answer whether he would knowingly issue two search warrants under the same circumstances.

Title 22 O.S. 1981, § 1221, requires that all search warrants be signed by a "magistrate." The Fourth Amendment requires that the magistrate must be "neutral and detached" and "must be capable of determining whether probable cause exists for the requested arrest or search." *Shadwick v. City of Tampa*, 407 U.S. 345, 350, 92 S.Ct. 2119, 2123, 32 L.Ed.2d 783 (1972). As part of this duty, the issuing magistrate must not only determine that the affidavit and warrant are in the proper form, but that the person presenting the affidavit knows its contents and wants to, and does, swear to the same. *Southard v. State*, 297 P.2d 585 (Okl.Cr.1956). More importantly, the issuing magistrate "must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion...." *Giordenello v. United States*, 357 U.S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503 (1958). Faithful performance of these duties by the issuing judge compliments and strengthens the purpose of the magistrate requirement, which is to interpose a neutral figure between the citizen and the police officer "engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948).

We agree with the preliminary hearing magistrate that, due to his findings regarding this issue, it cannot be said the requirement of a neutral and detached magistrate was fulfilled. Furthermore, it is apparent that had the warrants been read together, no search warrants would have been issued. With the exception of the addresses in which the property allegedly would be found, the affidavits were identical. We agree with the magistrate that in such a circumstance, the reliability of the informant was not established, and, therefore, probable cause did not exist to issue the warrants.

Accordingly, we REVERSE the conviction herein, and REMAND this case for

further proceedings not inconsistent with this opinion.

BRETT, J., concurs.

BUSSEY, J., dissents.

BUSSEY, Judge, dissenting: .

Appellant managed two bail bonding businesses in Oklahoma City which were owned by his wife Charlene Fletcher. They were both located in downtown Oklahoma City within a few blocks of each other. Early in the evening of November 4, 1981, search warrants for each office were executed and appellant was arrested. The warrants were identical except for the addresses and the fact that the issuing judge personally endorsed at the bottom of one warrant authorization to execute anytime day or night. The second warrant also contained his authorization, but reflected the judge's signature was attached by a police officer for the judge.

In each warrant, the objects of the search were identical and consisted of an inventory list by quantity and model number of office furniture which had been taken a few months earlier in a burglary of the authorized Scott Rice Office Furniture dealer in Oklahoma City. The warrant also recited that an unnamed informant had seen the items in the offices within the previous twenty-four hours and that appellant had told the informant the goods were stolen and that he was going to sell them for a profit. Items from the list were found at each location.

Appellant urged prior to the preliminary hearing and on appeal that the evidence recovered pursuant to the warrants should be suppressed on a number of grounds. He asserts the warrants were defective because the affidavits did not establish probable cause for the search. He hinges this contention on the fact that the informant said he had seen the items on the list at both places within the previous twenty-four hours. The argument is that the affidavits are necessarily inaccurate because they describe the property as being in multiple places, and that it could not have been at two places at once.

I do not see this as a fatal flaw in the warrants. Property listed in the warrants was found at both locations, as was other stolen property not listed therein. The construction which the majority gives the warrants is the hypertechnical interpretation which should be avoided when reviewing the probable cause finding of the magistrate. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). A common sense approach to the warrants allows one to agree that probable cause existed to believe some of the items listed could be found at one of the specified addresses, and to nonetheless accept the same of the second address, which is in fact what proved to be the case.

At a pretrial motion hearing, the judge who issued the warrants was called and he testified that he did not recall issuing more than one warrant. The majority holds that this indicates the judge did not perform his judicial function in issuing them. The judge did acknowledge his signature on each and the officer who appeared before the judge testified that he presented both affidavits to the court at one time. I decline to assume that the judge failed to review the evidence for probable cause simply because he did not have total recall concerning the event. The everyday experiences of life militate against such a conclusion.

The majority holds that the District Court is bound by the ruling of the magistrate as the trier of fact. I disagree with this interpretation of Rule 6. None of the orders or rulings (see the majority opinion for a list of those) which may be appealed under this Rule could be dissected strictly into factual errors and legal errors for purposes of review.

For instance, the magistrate in this case made a finding that the warrants were executed in the nighttime. The issue of when nighttime occurs cannot be considered apart from the law, especially since it is a statute which forbids nighttime searches unless certain conditions are found to exist (22 O.S.1981, § 1230).

The testimony of the various witnesses given at the hearing on appellant's motion

to suppress held prior to the preliminary hearing was generally consistent that the searches had begun at approximately 6:00 p.m. The trial court later considered evidence on the motion to suppress and at that time took judicial notice that on November 4, 1981, sunset occurred at 5:33 p.m. He recognized that it has been generally held that nighttime occurs thirty minutes after sunset and lasts until thirty minutes before sunrise. *See* 47 O.S.1981, § 12–201 and *State v. Dougherty*, 186 Kan. 820, 352 P.2d 1031 (1960). Thus, whether the search occurred at nighttime is not simply a finding of fact which is beyond the review of appellate courts.

Moreover, this Court has consistently held that the trial court is not bound by pretrial rulings on the admission of evidence. See *Mosier v. State*, 671 P.2d 62 (Okl.Cr.1983). It has been held that a pretrial order on a motion to suppress is interlocutory, and the trial court may err in not making an independent determination. *State v. McLemore*, 561 P.2d 1367 (Okl.Cr. 1977). Rule 6 is specially designed for review by the district court of magistrates' rulings on such motions, and would be meaningless if this Court rules that the district court is without authority to do so.

The majority supports its position that the magistrate's findings of fact are not reviewable with cases of this Court in which the holding applies to a trial court's findings of fact on a motion to suppress. The authority of a magistrate who is conducting a preliminary hearing is not the same as that of a district judge once a defendant is being bound over for trial. *State v. Benson*, 661 P.2d 908 (Okl.Cr. 1983). Just as the magistrate may not order the prosecutor to produce exculpatory material, he or she cannot make orders which later directs the district court to suppress the evidence. The authority of a magistrate is to preside over the preliminary hearing, to determine if a crime has been committed, and to determine whether there is probable cause to hold defendant for trial. *Benson.* Search warrants should be served during the daytime unless the affidavit is positive that the property is located at the designated place and the issuing judge finds there is a likelihood the property will be destroyed, moved, or concealed. 22 O.S.1981, § 1230. The affidavits in support of the warrants herein were positive as to the location of the stolen property. They also warranted a finding that it was likely the property would be removed since the informant stated that appellant told him or her that he intended to sell the items at a profit. The affidavits did not state that appellant planned to sell the furniture at a "later time" as the special judge's finding specifies. The issuing judge did not abuse his discretion in authorizing the execution of the warrants in the nighttime. *See Filgueras v. State*, 668 P.2d 1172 (Okl.Cr.1983); *Kay v. State*, 668 P.2d 1150 (Okl.Cr.1983); and, *McGowan v. State*, 662 P.2d 1389 (Okl.Cr.1983). The affidavits were sufficient to allow the admission of the evidence, and there being no other errors warranting reversal, I would affirm the conviction.

## OPINION ON REHEARING

PARKS, Judge:

The appellant, Dennis Bates Fletcher, was convicted in the District Court of Oklahoma County, Case No. CRF–81–5144, of Concealing Stolen Property. On November 5, 1986, this Court reversed that conviction because of faulty search warrants. The State has petitioned for a rehearing. In order to dispel some of the confusion about the status of a Rule Six appeal that resulted from our decision in this case, the rehearing is hereby granted.

Our decision in this case did not change, nor was it intended to change, the scope of a Rule Six appeal. Since the inception of Rule Six, the reviewing judge has had the authority to reverse a magistrate's ruling only on the basis of "and error of law." *State ex rel. Fallis v. Caldwell*, 498 P.2d 426, 429 (Okl.Cr.1972). Of course, many legal issues involve "mixed questions of law and fact" meaning questions "which require the application of a legal standard to the historical-fact determinations...." *Townsend v. Sain*, 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9

L.Ed.2d 770 (1963). The question of whether probable cause exists to issue a search warrant is a mixed question of law and fact. *See Booth v. State*, 67 Okl.Cr. 413, 94 P.2d 846, 850 (1939). Pure factual issues deal with basic, primary or historical facts, in the sense of a recital of external events and the credibility of their narrators. *Townsend, supra*. Based on the foregoing, when a district court reviews an examining magistrate's decision in the context of a Rule Six appeal, the district court must give appropriate deference to the basic, primary or historical facts found by the magistrate unless such findings have no support in the record. The scope of review of the district court, in the Rule Six appeal process, is thus limited to conclusions of law based either on mixed questions of law and fact or pure questions of law.

For example, a magistrate's determination of the time at which the sun sets on a particular day or the actual time at which the police serve a warrant are purely questions of fact which are not reviewable unless the magistrate's findings have no support in the record. Conversely, the determination of what constitutes the "nighttime" in Oklahoma is purely a question of law. Under 47 O.S.1981, § 11–801, nighttime starts thirty minutes after sunset and ends thirty minutes before sunrise. Accordingly, like the determination of multiple representation under *Cuyler v. Sullivan*, 446 U.S. 335, 342, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980), or ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984), the issue of whether a warrant was served in the nighttime is a mixed question of law and fact which must be decided on appeal by applying the reviewing court's legal determinations to the magistrate's findings of fact which are supported by the record. In this case, the preliminary hearing magistrate was presented competent evidence from which he could reasonably conclude that the warrants were executed more than thirty minutes after sunset and, on this record, such a factual finding was necessarily included in his conclusion that the warrants were executed in the nighttime.

Insofar as the record before the magistrate supported a finding that the warrants were in fact executed at a time more than thirty minutes after sunset, the district court was required to give deference to this factual finding. Moreover, when the legal standard of what constitutes nighttime in Oklahoma, *see* 47 O.S.1981, § 11–801, is applied to the foregoing factual determination which was properly supported by the record, it is clear that the magistrate was correct as a matter of law in determining that the warrants were executed in the nighttime.

Accordingly, in the context of a Rule Six appeal, the district court is not entitled to make an independent redetermination of purely factual questions which have been resolved by the preliminary hearing magistrate, and which are supported by the record. Thus, the district court could not reverse the examining magistrate's finding that the warrant had in fact been executed thirty minutes after sunset so as to have been served in the nighttime, unless there was no evidence in the record to support such a finding.

Furthermore, our review of the record clearly indicates that under the factual findings of the magistrate, the reliability of the confidential informant was not established and probable cause to issue identical search warrants for two different addresses could not exist as a matter of law. Moreover, we conclude that two identical affidavits used to support two search warrants issued simultaneously to search for thirty-five specific items of stolen office furniture at two different addresses, are insufficient as a matter of law to meet the requirement that affidavits "be positive that the property is ... in the place to be searched" so as to justify service during the nighttime. *See* 22 O.S.1981, § 1230.

We believe that limiting the scope of review of the District Court, in the Rule Six appeal process, to "errors of law" serves the desirable purpose of foreclosing some of the problems associated with forum shopping for magistrates. *See Nicodemus v. State*, 473 P.2d 312, 316 (Okl.Cr. 1970). Such a limitation achieves a proper

balance between the State's right to appeal what it perceives to be an erroneous ruling by the examining magistrate and the need for a degree of independence on the part of examining magistrates so as to prevent unnecessary harassment of the accused by way of shopping around for a magistrate who will render a favorable decision.

We emphasize that the scope of review of the district court is limited to errors of law only in the Rule Six context when the district court is sitting as an appellate court in review of the ruling made by a preliminary hearing magistrate. The district court, when acting in its traditional role as the trial court, is not bound by pretrial rulings on the admission of evidence but is entitled to make an independent determination of the factual findings. *See Mosier v. State,* 671 P.2d 62, 66 (Okl. Cr.1983). This is because the Rule Six process was created solely to provide a remedy to the prosecutor whose case was improvidently dismissed at preliminary hearing. *Id.* We believe that this distinction is justified for the reasons previously given, and because of the uniquely different roles to be served by the preliminary hearing magistrate and the trial court. The preliminary hearing magistrate makes initial rulings on motions to suppress for the purpose of determining whether the crime charged has been committed and, if so, whether there is probable cause to believe the accused committed it. *See State v. Benson,* 661 P.2d 908, 909 (Okl.Cr.1983); *Allen v. State,* 527 P.2d 204, 207 (Okl.Cr. 1974). The trial court is responsible for ensuring that an accused receives a fair and impartial trial, and that the State presents sufficient evidence from which a rational trier of fact could find the existence of each element of the crime charged beyond a reasonable doubt. *See Spuehler v. State,* 709 P.2d 202, 203–04 (Okl.Cr. 1985); *Smith v. State,* 405 P.2d 1020, 1022 (Okl.Cr.1965).

One of the problems in the instant case was that the district court judge who reversed the magistrate's order suppressing admission of the items taken pursuant to the search warrant refused to state the

reasons for his ruling despite defense counsel's urging him to do so. With no record to review, it was impossible for this Court to determine whether the reversal was premised on purely factual questions or on errors of law. Since this Court had no way of knowing the basis for the district court's ruling, we independently reviewed the only record available—the magistrate's detailed order—and found no errors of law. Accordingly, the case was reversed. In order to avoid this problem in the future, this Court finds that from this date forward, whenever a district judge reviews a magistrate's ruling in a Rule Six appeal, he shall commit to writing the reasons for his decision, specifically noting the errors of law found, regardless of whether the magistrate's ruling is affirmed or reversed.

Accordingly, we reaffirm our prior decision in this case.

BRETT, J., concurs.

BUSSEY, J., not participating.